**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**Tonya Knight-Bonner,**

       **Plaintiff,**             **Civil Action No. 11-13436**

   vs.                          **District Judge Sean F. Cox**

**BAC,**                             **Magistrate Judge Mona K. Majzoub**

       **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

**I.**    **RECOMMENDATION:** Defendant's motion for summary judgment (docket no. 17) should be **GRANTED** and Plaintiff's complaint should be dismissed.

**II.**    **REPORT:**

This matter comes before the Court on the motion for summary judgment filed by Defendant on April 30, 2012. (Docket no. 17). Plaintiff filed a response. (Docket no. 22). Defendant filed a reply. (Docket no. 24). The motion has been referred to the undersigned for recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 18). The Court dispenses with oral argument on the motion pursuant to E.D. Mich. LR 7.1(f). This matter is now ready for ruling.

**A.**    **Facts and Procedural History**

Plaintiff Tonya Knight-Bonner filed a four count complaint against Defendants Bank of America and Prime Financial on August 8, 2011, alleging breach of contract, violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq., (RESPA) against Bank of America, fraudulent misrepresentations, and negligent misrepresentation. (Docket no. 1). Subsequently, the Court dismissed each of Plaintiff's claims except for the RESPA claim against Defendant Bank of

1

America. (Docket no. 2). Plaintiff alleges that Defendant Bank of America, as the servicer to her mortgage loan, changed her loan account number without notification, reported Plaintiff's account as delinquent to the credit bureaus while in possession of her qualified written requests (QWR), failed to properly respond to QWR's Plaintiff sent to Defendant pursuant to RESPA, and failed to notify Plaintiff that her loan and the servicing of her loan had been sold or transferred.

The undisputed facts show that Plaintiff borrowed the sum of one hundred fifty four thousand and fifty ($154,050.00) dollars from The Prime Financial Group, Inc. on September 18, 2007, and as security for the loan granted Prime Financial a mortgage interest in real property located at 23407 Plum Hollow Street in Southfield, Michigan. (Docket no. 17, ex. A, B). That same day the servicing of the mortgage was assigned, sold, or transferred from The Prime Financial Group, Inc. to Bank of America, N.A. (BANA), with an effective date of November 1, 2007. (Docket no. 17, ex. C).

BANA originally assigned account number 6437096735 to Plaintiff's loan before changing her account number to 870324953 in late 2009. Plaintiff discovered the change and on December 16, 2009 sent a lengthy letter identified as a "RESPA Qualified Written Request, Complaint, and Dispute of Debt and Validation of Debt Letter" to the Bank of America. (Docket no. 22, ex. A). The letter explains that its purpose was to:

> request specific itemized information about the accounting and servicing of my mortgage and of my need for understanding and clarification of various charges, credits, debits, transactions, actions, payments, analyses and records related to the servicing of my loan from its inception to the present date.

The letter does not identify which individual charges, credits, debits, etc. were the subject of Plaintiff's inquiry, nor does it identify a specific event that prompted her request. Instead, the letter states that Plaintiff disputes the validity of the current debt Bank of America claimed she owed, and

2

informs Bank of America that she intends to verify that her account is "accurate to the penny" to ensure that she has not been the victim of predatory practices. (Docket no. 22, ex. A). Contained within Plaintiff's eleven page letter are lengthy interrogatories on subjects ranging from Bank of America's loan accounting and servicing systems, debits and credits, mortgage and assignments, attorney fees, and "BPO fees" among other things, along with numerous demands for the production of documents.

Defendant shows that Plaintiff mailed to Bank of America a second letter along with a copy of the first "QWR" on January 12, 2010. (Docket no. 17, ex. E, H). On January 29, 2010 Plaintiff sent to Bank of America another letter she identified as a QWR that makes the same disclosure demands as the previous two letters. (Docket no. 17, ex. H). Seven days later, on February 5, 2010, Plaintiff sent Bank of America yet another letter identified as a QWR which is virtually identical to the previous three, except that this letter references both Plaintiff's old and new account numbers. (Docket no. 17, ex. J).

Plaintiff's fifth "QWR" to Bank of America was mailed less than one month later on March 2, 2010. (Docket no. 17, ex. N). In this correspondence, Plaintiff referenced both the old and new account numbers and for the first time explained that Bank of America "switched the loan numbers" and assigned a new loan number to Plaintiff's account with which she was not familiar. On May 10, 2010 Plaintiff mailed a sixth "QWR" to Bank of America, informing them that until Plaintiff receives satisfactory responses to her previous QWR's she will no longer make payments toward her mortgage to Bank of America. (Docket no. 17, ex. Q). Finally, on June 13, 2011 Plaintiff mailed to Bank of America a seventh correspondence labeled a QWR. (Docket no. 17, ex. V).

Plaintiff filed the instant lawsuit in August 2011. Defendant claims that it properly

3

responded to each of Plaintiff's letters.

**B.   Governing Law**

Defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Id.* A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

**C.   Analysis**

Plaintiff alleges that Defendant failed to acknowledge her December 16, 2009 QWR within twenty business days, failed to mention the merger between Prime Financial and CRE-HFS 1st Mortgage, and failed to notify Plaintiff of the merger between BANA and BAC Home Loans LP. She argues that Defendant's response to her March 2, 2010 QWR was invalid because Defendant failed to conduct its own investigation and provide Plaintiff with a written explanation concerning the switching of her loan numbers. Finally, Plaintiff alleges that Defendant violated RESPA because it failed to "halt negative reporting to credit agencies" while in possession of Plaintiff's May 10, 2010 and June 13, 2011 QWRs.

RESPA provides that a borrower may submit a qualified written request to its loan servicer

for "information relating to the servicing of such loan," and if such a request is made the servicer must provide a written response acknowledging receipt of the request within twenty days. 12 U.S.C. § 2605(e)(1)(A).

> The term "qualified written request" is defined as:
>
> [A] written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that -
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).

> Within a period of sixty days of receiving a qualified written request, the servicer must:
>
> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction...;
> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes -
>    (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
>    (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
> (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes -
>    (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
>    (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e)(2).

Plaintiff challenges Defendant's response to her December 16, 2009 letter, claiming that Defendant acknowledged receipt of the December 16, 2009 letter on January 29, 2010 when they should have acknowledged receipt by January 25, 2010. She also claims that Defendant failed to

mention the merger between lender Prime Financial and CRE-HFS 1st Mortgage, and failed to notify her of the merger between BANA and BAC Home Loans LP.

The undersigned suggests that the December 16, 2009 letter does not constitute a QWR as defined by RESPA because the vast majority of that lengthy request does not relate to the servicing of Plaintiff's loan as defined under 12 U.S.C. § 2605(i)(3). In addition, the letter does not identify any reason for Plaintiff's belief that the servicing of her account was in error as required under § 2605(e)(1)(B). Instead, Plaintiff makes vague assertions that she may have been the victim of predatory lending without stating any basis for that belief. Furthermore, although Plaintiff's correspondence provides sufficient detail to the Defendant regarding what information she sought in her request, the vast majority of the requests were not proper under RESPA.

It is the undersigned's opinion that Defendant was not obligated to respond to the December 16, 2009 correspondence because it was not a proper QWR under RESPA. Even if the letter is construed to be a QWR, it is this Court's opinion that Defendant timely and appropriately responded to the request given the fact that Plaintiff mailed multiple identical requests to Defendant within a matter of weeks, and Defendant offers proof that they did not receive Plaintiff's December letter until January 27, 2010. (Docket no. 17, ex. I). Plaintiff's only proof that Defendant received her December 16 letter on December 29 consists of a receipt with a United States Postal Service stamp dated December 29, 2009, but no indication of when Defendant received the letter. (Docket no. 22, ex. B).

Finally, Plaintiff has not shown that Defendant was under an obligation to notify Plaintiff of a transfer between lender Prime Financial and CRE-HFS 1st Mortgage, which Defendant claims is a BANA-owned asset, or similarly that they were under any obligation to notify Plaintiff of any

merger between BANA and BAC Home Loans LP, which according to the record is a subsidiary of BANA. (Docket no. 17, ex. G).

Next, Plaintiff challenges the validity of Defendant's response to her March 2, 2010 QWR, arguing that Defendant failed to conduct its own investigation and provide Plaintiff with a written explanation concerning the switching of her loan numbers. In her March correspondence, Plaintiff explained that she was disputing her account because Bank of America "switched the loan numbers" and assigned her a loan number for which she was not familiar. (Docket no. 17, ex. N). Defendant shows that it timely responded to the March letter and, as it had done in response to Plaintiff's previous letters, provided Plaintiff with copies of her loan documents and a loan transaction history that documented each and every loan transaction made on behalf of Plaintiff's account from September 2007 through the date the statement was prepared. Plaintiff testified that from the documents Defendant provided in response to her letters she could determine that the property address associated with the new loan number was accurate, the amount of the original loan and lender associated with the new loan was correct, and the payments Plaintiff had made on her loan from its inception in 2007 were accurately reflected. (Docket no. 17, ex. F at p. 42-45).

RESPA "does not require a servicer to answer endless interrogatories propounded by a borrower." *Golliday v. Chase Home Fin., LLC*, No. 10-532, 2011 WL 4352554, at *10 (W.D. Mich. Aug. 23, 2011). The undersigned suggests that Defendant properly responded to the March 2, 2010 correspondence.

Next, Plaintiff argues that Defendant violated RESPA because it failed to "halt negative reporting to credit agencies" while in possession of Plaintiff's May 10, 2010 and June 13, 2011 QWRs. Plaintiff's May 10, 2010 and June 13, 2011 letters do not constitute QWRs "relating to a

7

dispute regarding the borrower's payments." 12 U.S.C. § 2605(e)(3). Furthermore, even if they did, Plaintiff has not produced evidence to show that Defendant reported the delinquency of her account to credit bureaus during the QWR review process. Accordingly, there is no evidence to show that Defendant violated RESPA by reporting that Plaintiff's account was overdue during the sixty day period beginning on the date of the servicer's receipt of a QWR relating to a dispute regarding Plaintiff's payments. 12 U.S.C. § 2605(e)(3).

For the reasons stated herein, this Court recommends that Defendant's motion for summary judgment be granted and Plaintiff's complaint be dismissed.

### III.     **NOTICE TO PARTIES REGARDING OBJECTIONS**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response

proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: October 19, 2012         s/ Mona K. Majzoub
                                MONA K. MAJZOUB
                                UNITED STATES MAGISTRATE JUDGE


## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Tonya Knight-Bonner and Counsel of Record on this date.

Dated: October 19, 2012         s/ Lisa C. Bartlett
                                Case Manager

9